**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,**

v.

**COSMAIR, INC., L'OREAL HAIR CARE DIVISION, Defendant-Appellant.**

No. 86–1806.

United States Court of Appeals, Fifth Circuit.

July 16, 1987.

---

Thomas W. Budd, Clifton, Budd, Burke & DeMaria, Michele C. Horan, New York City, Jonathan C. Wilson, Haynes & Boone, Dallas, Tex., for defendant-appellant.

John F. Suhre, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

Cosmair, Inc. appeals the issuance of a preliminary injunction requiring it to continue severance pay and medical insurance coverage promised to an employee in exchange for a release of Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and other claims. Cosmair stopped performing its part of the bargain when the employee filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC). We modify the injunction in part, and, as modified, affirm.

### I. Factual Background

Robert Lee Terry was Central Texas Sales Representative for the L'Oreal Hair Care Division of Cosmair. Kevin Bergin, Director of Human Resources for Cosmair, fired Terry on March 18, 1986. When terminated, Terry was 53 years old and had worked for Cosmair 18 years. Bergin offered to continue Terry's salary and medical benefits for 37 weeks following discharge in exchange for Terry's releasing Cosmair

> from all actions, causes of action, claims and demands whatsoever including, but not limited to, any claims, such as those under any federal, state or local law dealing with discrimination in employment on the basis of sex, race, national origin, religion, or age, arising from or in connection with his employment with COSMAIR, INC. which he ever had, now has or may have from the day of his commencement of employment with COSMAIR, INC. to the date of this release.

Terry signed the release on March 21, 1986, without consulting his attorney, after Bergin increased the pay and medical benefits offered to 39 weeks. If Terry had not signed the release Cosmair would not have offered him any severance benefits.

On April 7, 1986, Terry filed a charge with the EEOC alleging that Cosmair had discriminated against him on the basis of age in terminating his employment. In addition to allegations that he personally had been harrassed and wrongfully terminated, Terry asserted that Cosmair had a policy of discharging older employees or forcing them into early retirement so that it could replace them with younger employees. On its face the charge sought no relief. When Bergin received notice of the charge, he discontinued Terry's severance benefits. Terry then filed a second charge with the EEOC contending that Cosmair had unlawfully retaliated against him for filing a charge by discontinuing his benefits.

After investigating the retaliation charge and unsuccessfully attempting conciliation, the EEOC determined reasonable cause existed to believe that Cosmair had unlawfully retaliated against Terry for filing an age discrimination charge. The Commission then moved for a preliminary injunction barring Cosmair from refusing to pay severance benefits to Terry, from seeking releases from other employees, and from retaliating against other employees who file age discrimination charges or participate in

EEOC investigations. The magistrate recommended denying the EEOC's motion. He concluded that in the absence of case authority establishing the illegality of Cosmair's conduct the EEOC had not proven a substantial likelihood of success on the merits. The district court, not accepting the magistrate's recommendation, granted the motion for preliminary injunction. The court held that Cosmair's conduct was retaliation arising out of the employment relationship and thus was unlawful. Cosmair appeals.

## II. Requirements for a Preliminary Injunction

■ To obtain a preliminary injunction, the moving party bears the burden of proving the following:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest.

*Gearhart Indus., Inc. v. Smith Int'l, Inc.,* 741 F.2d 707, 710 (5th Cir.1984). Each of these elements is a mixed question of fact and law. *Apple Barrel Prod., Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984). We review the district court's findings of fact under a clearly erroneous standard and its conclusions of law de novo. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir.1985). The ultimate issue, however, is whether the district court abused its discretion in granting the preliminary injunction. *Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256, 1259 (5th Cir.1987).

On appeal, Cosmair challenges two of the requirements for a preliminary injunction as not being met. It contends that the EEOC did not demonstrate a substantial likelihood of success on the merits and did not prove irreparable injury. In addition, Cosmair contests the scope of the injunction. The company maintains that the district court erred in issuing a company-wide injunction and in enjoining Cosmair from requiring employees to sign releases to receive severance benefits. We will address these contentions in turn.

## III. Likelihood of Success on the Merits

The district court found the EEOC likely to succeed on the merits because Cosmair violated the prohibition on retaliation contained in section 4(d) of the ADEA when it halted severance payments in response to Terry's filing a charge. Section 4(d) makes it "unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d). This provision is derived from a similar one in title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a); *see Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), and its purpose is to protect persons who "resort[ ] to the legal procedures that Congress has established in order to right congressionally recognized wrongs," *East v. Romine, Inc.,* 518 F.2d 332, 340 (5th Cir.1975). Cosmair argues that Terry is not entitled to claim the protection of section 4(d) because Terry was no longer an employee and because Cosmair's actions did not constitute retaliation.

### A. Employee Status

■ The ADEA protects from retaliation "employees or applicants for employment." 29 U.S.C. § 623(d). Employee means "an individual employed by any employer." *Id.* § 630(f). Cosmair contends that because Terry had already been terminated when he signed the release, and so was no longer employed, he was not protected from retaliation. The term "employee," however, is interpreted broadly: it includes a former employee as long as the alleged discrimination is related to or arises out of the employment relationship. *Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir.1978) (per curiam); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1165–66 (10th Cir.

1977); *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 147 (6th Cir.1977); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972). Certainly the discontinuance of severance pay arose out of Terry's employment relationship with Cosmair. Terry's first charge with the EEOC alleged that Cosmair had discriminated against him while he was an employee. The release waived all claims "arising from or in connection with" Terry's employment with Cosmair. The company agreed to continue to pay Terry's salary and medical insurance premiums, and calculated the length of time payments would continue based on the length of Terry's tenure with the company. The district court properly concluded that Terry was a protected employee under the ADEA.

### B. Retaliation

Cosmair also argues that it did not violate section 4(d) when it stopped Terry's severance pay because it was merely suspending performance of its duties under the release after Terry breached. The EEOC argues that whether Terry breached the release is irrelevant. According to the Commission, Cosmair could not suspend payments in response to Terry's filing a charge; doing so was retaliation. Cosmair can only rely on the release as a defense to Terry's ADEA cause of action. The district court agreed with the EEOC, holding that a release is at most a defense to an ADEA claim and cannot be used to impede EEOC enforcement of the civil rights laws.

We agree with the district court that Cosmair's suspension of payments was unlawful retaliation, but we do not fully adopt the district court's rationale for reaching that result. Clearly if Cosmair stopped providing Terry benefits to which he was otherwise entitled simply because he filed a charge, the company would be guilty of retaliation. *See McDaniel v. Temple Indep. School Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985) (retaliation requires some "adverse employment action"); *cf. Wolf v. J.I. Case Co.,* 617 F.Supp. 858, 867–68 (E.D. Wisc.1985) (denial of necessary employment information); *Grove v. Frostburg*

*Nat'l Bank,* 549 F.Supp. 922, 944–45 (D.Md.1982) (change in company vacation policy). Cosmair maintains that the present case is distinguishable because Terry's breach relieved the company of its obligation to perform. We need not decide whether Cosmair could suspend payments if Terry breached the release, because Terry did not breach the release. The release did not obligate Terry not to file a charge. His filing a charge did not constitute a breach. Cosmair was not relieved of its obligation to perform; therefore, its discontinuing payments was unlawful retaliation.

■ Through the release, Terry waived "all actions, causes of action, claims and demands whatsoever." Actions, causes of action, claims, and demands all entail the seeking of "one's own" from another. *See* Black's Law Dictionary 49, 280, 313, 516 (rev. 4th ed. 1968). The purpose of a charge, however, is not to seek recovery from the employer but rather to inform the EEOC of possible discrimination. As the Supreme Court stated in *EEOC v. Shell Oil Co.,* 466 U.S. 54, 68, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984): "[A] charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit. The function of the [ADEA] charge, rather, is to place the EEOC on notice that someone ... believes that an employer has violated the [Act]." Indeed, charges can be filed by persons other than the employee who allegedly suffered from the discrimination. *See* 29 C.F.R. § 1626.4 (1986) (EEOC shall "receive information concerning alleged violations of the [ADEA], including charges and complaints, from any source"). Moreover, the charge Terry actually filed merely described Cosmair's alleged discrimination and contained no demand for relief. No language of the release barred Terry's right to file a charge.

■ Cosmair represented at oral argument, however, that the parties intended that the release waive Terry's right to file a charge. To the extent we accept this representation, and some testimony at the preliminary injunction hearing and language in Terry's charge supports it, we

hold, alternatively, that a waiver of the right to file a charge is void as against public policy. Therefore, any attempt by Terry to waive his right to file a charge is void.

"The relevant principle is well-established: a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery,* —— U.S. ——, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987). The interest in enforcement of the release is to encourage private settlement of age discrimination disputes. *See Runyan v. National Cash Register Corp.,* 787 F.2d 1039, 1045 (6th Cir.) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). But whether upholding a waiver of the right to file a charge furthers that interest is questionable. The public interest in private dispute settlement is outweighed by the public interest in EEOC enforcement of the ADEA.

Allowing the filing of charges to be obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws. The EEOC depends on the filing of charges to notify it of possible discrimination. *EEOC v. Shell Oil Co.,* 466 U.S. at 69, 104 S.Ct. at 1631; *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir.1969). A charge not only informs the EEOC of discrimination against the employee who files the charge or on whose behalf it is filed, but also may identify other unlawful company actions. For example, in his charge Terry named two co-workers who allegedly had been fired or forced into early retirement because of age discrimination. When the EEOC acts on this information, "albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *General Telephone Co. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980); *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1542–43 (9th Cir.1987). We hold that an employer and an employee cannot agree to deny to the EEOC the information it needs to advance this public interest. A waiver of the right to file a charge is void as against public policy.

Since Terry could not waive his right to file a charge, he did not breach the release when he filed a charge. The district court found, and its finding is not clearly erroneous, that Cosmair terminated Terry's severance payments solely because he filed a charge. Since Cosmair had no legal excuse for suspending payments, this constitutes retaliation. Thus, the EEOC established a substantial likelihood that it would succeed on the merits of its claim that Cosmair retaliated against Terry in violation of the ADEA.

### IV. Irreparable Injury

Cosmair argues next that the EEOC failed to show irreparable injury. The district court held that irreparable injury is presumed from violations of the civil rights statutes under *United States v. Hayes Int'l Corp.,* 415 F.2d 1038, 1045 (5th Cir. 1969). The court also found irreparable injury in the denial of financial and medical benefits to Terry and the short-circuiting of the EEOC's investigation by the fears of potential witnesses who also had signed releases. We need only reach the first ground for the district court's decision to uphold its determination of irreparable injury.

When an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction. *Murry v. American Standard, Inc.,* 488 F.2d 529, 531 (5th Cir.1973). Instead, when a civil rights statute is violated, "irreparable injury should be presumed from the very fact that the statute has been violated." *Hayes,* 415 F.2d at 1045. Cosmair argues against extending *Hayes,* citing confusion over the scope of the presumption as reflected in *Middleton-Keirn v. Stone,* 655 F.2d 609 (5th Cir. Unit B 1981). *Stone,* however, reaffirms the *Hayes* presumption in cases in which administrative remedies have been exhausted. *Id.* at 612. Here, the ADEA authorizes injunctive relief, 29

U.S.C. § 626(b), the statutory conditions have been met, and administrative proceedings on Terry's retaliation claim are completed. The public interest protected by EEOC enforcement of the ADEA justifies extending the *Hayes* presumption to ADEA retaliation cases. The district court properly presumed irreparable injury.

The EEOC established a substantial likelihood of success on the merits and irreparable injury, as well as the other prerequisites for a preliminary injunction. The district court did not abuse its discretion in granting the request for a preliminary injunction.

### V. Scope of the Injunction

■ Cosmair makes two challenges to the scope of the injunction as ordered by the district court. First, it argues that the district court erred in ordering a company-wide injunction against Cosmair barring the company from discontinuing severance pay of other employees who file charges. Cosmair relies on *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733–35 (5th Cir.1977), which holds that one incident of discrimination is not sufficient to support a company-wide injunction. The evidence in the present case, however, revealed a company policy of terminating payments to employees who file charges. Bergin testified that he told all employees that their severance payments would be halted if they filed a charge, and his response to Terry's charge justifies the inference that he would do as he warned. A company-wide injunction was not an abuse of discretion. *Id.* at 734.

■ Second, Cosmair argues that the district court erred in enjoining it from "requiring employers to sign waivers or releases of claims of employment discrimination against the Defendant in order to receive severance pay or any other benefit of employment." The EEOC requested this relief in its motion for a preliminary injunction, but on appeal conceded that this relief is overbroad to the extent the injunction is not limited to waivers of the right to file a charge. We agree with both parties that waivers of ADEA causes of action are not void as against public policy. The reasoning of *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1041–45 (6th Cir.) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986), is applicable to this case. *See also United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 860–61 (5th Cir.1975) (upholding waivers of title VII causes of action), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). A private, unsupervised waiver of an ADEA cause of action by an employee is valid as long as it is voluntary and knowing. *See Allegheny-Ludlum*, 517 F.2d at 861; Notice of Proposed Rulemaking, 50 Fed.Reg. 40870, 40871 (1985) (to be codified at 29 C.F.R. § 1627.16(c) (proposed Sept. 17, 1985). The injunction is overbroad to the extent it applies to more than waivers of the right to file a charge.

■ Finally, we add two clarifying notes. First, although an employee cannot waive the right to file a charge with the EEOC, the employee can waive not only the right to recover in his or her own lawsuit but also the right to recover in a suit brought by the EEOC on the employee's behalf. *See EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir. 1987) (holding that backpay claim by EEOC on behalf of employee who settled title VII claim is moot); *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir.1986) (stating that EEOC dismissed charge of settling employee "based on its conclusion that [the employee], by signing the release, had waived all Title VII claims against General Electric"). Second, the fact that a waiver of the right to file a charge is void does not invalidate a waiver of a cause of action with which it is conjoined. *See* Restatement (Second) of Contracts § 184(1) (court may enforce remainder of agreement unenforceable in part as against public policy when "performance as to which the agreement is unenforceable is not an essential part of the agreed exchange").

The district court's order granting the motion of the EEOC for preliminary injunctive relief should be modified by deleting the language which forbids Cosmair to ob-

**1092**

tain any waivers from employees other than waivers of the employees' rights to file charges with the EEOC. The district court is directed to issue a modified injunction consistent with this opinion.

MODIFIED, AFFIRMED and REMANDED.