John P. O'HARE, Plaintiff-Appellant,

v.

GLOBAL NATURAL RESOURCES, INC., and Global Natural Resources Corp. of Texas, Defendants-Appellees.

No. 89-2464.

United States Court of Appeals, Fifth Circuit.

April 23, 1990.

Gregg M. Rosenberg, Houston, Tex., for plaintiff-appellant.

Thomas H. Wilson, W. Carl Jordan, Vinson & Elkins, Houston, Tex., for defendants-appellees.

Before WISDOM, JOHNSON and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

### Facts and Proceedings Below

John O'Hare sued his employer, Global Natural Resources, Inc. and Global Natural Resources Corp. of Texas ("Global"), under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* O'Hare contends that Global intentionally discriminated against him due to his age. Global argues that O'Hare's suit is precluded by a release he signed.

O'Hare's employment contract provided that he could be discharged only for cause. He was entitled to certain benefits if he was discharged without cause but would receive no benefits if fired for cause. In November of 1984, Global gave O'Hare notice that it believed that cause existed to terminate his employment. On February 6, 1985, O'Hare signed a settlement agreement with Global. The agreement gave O'Hare fewer benefits than he would have received had he been fired without cause. In exchange for these benefits, he released Global from any potential liability.

Global contends that the release is valid. O'Hare is an attorney and a businessman who has experience with contracts and the release was plain and unambiguous. He was given a draft of it one month before it was signed and consulted three attorneys before signing it.

O'Hare argues that an unsupervised release is invalid under the ADEA, that the release lacked consideration, and that it was signed under duress. O'Hare claims that Global harassed him at work so as to make him leave his employment. His duties, office, and staff were apparently taken from him. He concludes that as a result of this ostracism, he developed stress and anxiety which in turn led him to sign the release.

The district court granted summary judgment on the ground that O'Hare's release is valid. Summary judgment must be "rendered forthwith if ... there is no genuine issue as to any material fact and the ... moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences that are " 'drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

### Releases and the ADEA

O'Hare argues that a release must be supervised by the EEOC for it to be a valid waiver of rights under the ADEA. We rejected this argument in *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1091 (5th Cir.1987). Similar holdings have been reached by our sister circuits. *See Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 401–02 (2nd Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 517–18 (3rd Cir.1988); *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 540 (8th Cir.), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); and *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1041, 1043 (6th Cir.) (en banc), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). Since the appellant has advanced no convincing argument as to why the law of this circuit should be changed[1] we reiterate: "waivers of ADEA

---

1. The appellant contends that *E.E.O.C. v. Cosmair, Inc.* was wrongly decided for two reasons. First, he contends that recent legislative activity shows that Congress disapproves of unsupervised releases of ADEA claims. Although the "introduction of ... bills and the passage of recent appropriations legislation" may show that Congress is unhappy with such releases now, they are not an "authoritative interpreta-tion of what the ADEA meant when the statute was enacted in 1967." *Bormann*, 875 F.2d at 402. Second, he contends that the ADEA incorporates the enforcement provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216 et seq. (FLSA) which have been construed to prohibit such release. Although the ADEA incorporates the FLSA's enforcement procedures, the purposes behind the two acts are "obviously

causes of action are not void as against public policy." *E.E.O.C.*, 821 F.2d at 1091.

### Consideration

■ O'Hare's argument that the release is invalid for lack of consideration is without merit. His argument can be presented in the form of a syllogism: (1) consideration cannot consist of something to which one is already entitled; (2) all of the benefits that O'Hare received he was entitled to under his employment contract; thus, (3) the release lacked consideration. The flaw in O'Hare's argument is that he was not entitled to the benefits he received. He was entitled to them only if he was discharged without cause. Global notified him that it was considering discharging him for cause in which case O'Hare would receive no benefits. Thus, O'Hare gave up a disputed right to the benefits he would have received had he been discharged without cause for an undisputed right to a smaller package of benefits.

### Duress

■ O'Hare's last defense to the release is that it is invalid due to duress. As a threshold matter, we must determine the criteria by which the validity of a waiver under the ADEA must be judged. O'Hare contends that Texas law governs this issue. Although there is universal recognition that a waiver of federal rights must be knowing and voluntary, there is some disagreement as to the proper source of law for determining the validity of the waiver. *See Riley v. American Family Mut. Ins. Co.*, 881 F.2d 368, 371–72 (7th Cir.1989). The better rule is to fashion a federal common law to determine this issue because the policies embedded in the federal statute should not be frustrated by state law. In *Flugence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir.1981), for example, we held that federal law governs the validity of the settlement of a Title VII claim. We noted "Creation of a federal rule rather than absorption of a state rule is appropri-

ate where ... the rights of the litigants and the operative legal policies derive from a federal source." *Id.* at 1209.

In determining what constitutes a knowing and voluntary waiver under the ADEA, we adopt a totality of the circumstances approach because it is "consistent with the strong congressional purpose underlying the ADEA to eradicate discrimination in employment." *Bormann*, 875 F.2d at 403. *See also Coventry*, 856 F.2d at 521–24 (3rd Cir.1988). The relevant factors in making this determination are:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann*, 875 F.2d at 403 (quoting *EEOC v. American Express Publishing Corp.*, 681 F.Supp. 216 (S.D.N.Y.1988)) and *Coventry*, 856 F.2d at 523 (quoting *EEOC*).

■ Assuming, as we must, that O'Hare was under stress when he signed the release, it is clear that this does not create a genuine issue of material fact. Summary judgments, like directed verdicts, must be granted if there is no need for a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509. An analysis of the totality of the circumstances demonstrates the futility of a trial: the appellant had the experience and the training to understand a relatively simple document; he received a copy of the agreement long prior to signing it; he consulted with three attor-

---

different." *Runyan*, 787 F.2d at 1043. The FLSA protects the lowest paid workers whereas the ADEA protects a different class of employees many of whom are "highly paid and capable

of securing legal assistance without difficulty." *Id.* at 1043. Thus, there is no reason to prohibit all releases under the ADEA. *See Runyan* and *Coventry*, 856 F.2d at 521 n. 8.

neys; and he received consideration for the release.  Appellant's simple claim of duress does not create a genuine issue.

The judgment of the district court is, therefore,

AFFIRMED.