James ROBINSON and Joyce Robinson, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

POWER PIZZA, INC. d/b/a Domino's Pizza, Defendant.

No. 97–1390–Civ–J–20B.

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 11, 1998.

William J. Sheppard, D. Gray Thomas, Sheppard & White, P.A., Jacksonville, FL, for Plaintiffs.

Milo Scott Thomas, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, for Defendant.

## ORDER

SCHLESINGER, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. No. 2, filed November 25, 1997). On January 13, 1998, Plaintiffs served the motion (and their Verified Complaint) on the Defendant, after which the Court set a hearing on this matter for January 28, 1998. Defendant subsequently filed a Motion to Dismiss the Complaint (for lack of subject matter jurisdiction) (Doc. No. 8, filed January 27, 1998) and a Motion for Continuance of the hearing (Doc. No. 7, filed January 27, 1998). On January 28, 1998, the Court granted Defendant's Motion for Continuance and rescheduled the hearing for Friday, January 30, 1998. Thereafter—and prior to the hearing—the Court received Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. No. 10), and an affidavit from Craig T. Jones, the President of Defendant Power Pizza, Inc., in opposition to Plaintiffs' Motion for Preliminary Injunction (Doc. No. 12). By separate Order the Court has denied Defendant's Motion to Dismiss.

## FACTS

Plaintiffs are African–American residents of American Beach, a predominantly African–American community located in Nassau County, Florida.[1] Plaintiffs filed this lawsuit against Defendant Power Pizza, Inc., a Florida corporation with its principal place of business located in Fernandina Beach, Nassau County, Florida, under Title II of the Civil Rights Act of 1964, alleging that Defendant's failure to provide food ready for consumption to their homes is discriminatory. Specifically, Plaintiffs state in their Verified Complaint as follows:

> On or about October 17, 1997, Plaintiffs James Robinson and Joyce Robinson communicated by telephone to the Defendant to order food ready for consumption, specifically a pizza, for delivery to their home in American Beach.
>
> The agent of the Defendant who received the Plaintiffs' telephone order stated that the Defendant did not deliver food in American Beach because of security reasons.
>
> On or about November 20, 1997, Defendant again refused to deliver food ready for consumption to the residence of Plaintiffs Robinson in American Beach.
>
> Other members of the Plaintiff class likewise have been refused service by the Defendant based upon the Defendant's contention that the Defendant does not deliver food to locations in American Beach because of a perceived security risk.
>
> The Sheriff of Nassau County, Florida, the chief law enforcement officer for Nassau County, Florida, including American Beach, has publicly stated that no security risk for delivery of food ready for consumption is posed in American Beach to any greater extent than in any other location in Nassau County. Specifically, in response to a question regarding Defendant's refusal to provide its service to American Beach, Sheriff Ray Geiger said, "I would feel comfortable to deliver there as good as I would anywhere else."
>
> At least two other places of public accommodation deliver pizza and other items of food ready for consumption to residents within the community of American Beach.
>
> Defendant delivers food ready for consumption to other neighborhoods surrounding American Beach, which such other neighborhoods are inhabited primarily by Caucasian or white persons.

Verified Complaint at ¶¶ 9–13, 15–16.

Aside from the alleged comments made by Sheriff Geiger, Defendant has not taken issue with the Plaintiffs' version of events. However, Defendant explains its refusal to provide home delivery services to residents of American Beach in the affidavit of its President, Craig T. Jones ("Jones"):

> In August 1991, Power Pizza, Inc. purchased the Domino's Pizza franchise in Nassau County, Florida.
>
> Pursuant to the franchise agreement, Power Pizza, Inc. operates within a contractu-

---

1. Plaintiffs state in their Verified Complaint that "American Beach is comprised of approximately 75 full-time residents and an approximately equal number of part-time residents" and that "only four residents of American Beach are of a race or ethnicity other than African–American." Complaint at ¶ 5(a), (c). Defendant did not attempt to dispute these facts.

ally defined market area. The defined area does not include the Nassau County communities of American Beach, Yulee or Amelia Island Plantation.

To provide delivery service to these areas, Power Pizza, Inc. established "drop off" locations at which Power Pizza, Inc. delivery personnel would meet residents of those communities to deliver food products.

With the elimination of the "thirty minute delivery guarantee," Power Pizza, Inc. explored the potential for expanding the scope of its delivery service. As a result, Power Pizza, Inc. has extended its delivery service to the Amelia Island Plantation community.

No expansion occurred in Yulee and American Beach. Regarding American Beach, Power Pizza, Inc. determined after it's investigation, which included communications with law enforcement personnel, review of police reports and lighting conditions, that it should continue its "drop off" policy to insure adequate security for its employees. The race of the residents of these communities, specifically American Beach, was not considered and played no role in Power Pizza, Inc.'s decision with respect to expanded in-home delivery services outside its contractually defined market area.

With respect to the communities of American Beach and Yulee, Power Pizza, Inc. continues delivery service to the established "drop off" locations.

Affidavit of Craig T. Jones ("Jones Aff.") at ¶¶ 1–7.

In their motion the Plaintiffs ask the Court to preliminarily enjoin the Defendant, its agents, employees and successors from refusing or otherwise failing to provide the goods and services of the Defendant to persons and locations within American Beach.

## DISCUSSION

■ A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless the movant meets its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless

the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, 'will not disserve the public interest.'

*White's Place, Inc. v. Glover,* 975 F.Supp. 1333, 1339 (M.D.Fla.1997) (*quoting Anheuser–Busch, Inc. v. A–B Distributors, Inc.,* 910 F.Supp. 587, 589 (M.D.Fla.1995) (citations omitted)).

The Court believes that Plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits. Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a states that:

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a.

■ Further, the statute makes it illegal for a person to "withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 2000a or 2000a–1 of this title." 42 U.S.C. § 2000a–2. During oral argument the parties agreed that to prevail, Plaintiffs must first establish a prima facie case of discrimination. The burden would then shift to the Defendant to offer a legitimate, non-discriminatory reason for the discrimination. Assuming Defendant does so, the Plaintiffs would then need to demonstrate that the reason proffered by the Defendant is a pretext. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hornick v. Noyes,* 708 F.2d 321, 325 n. 8 (7th Cir.1983) (applying *McDonnell Douglas* burden shifting Title VII test to Title II claim), *cert. denied,* 465 U.S. 1031, 104 S.Ct. 1295, 79 L.Ed.2d 696 (1984). Based on the allegations of the Complaint, Defendant argued during the hearing that the specific test to be used is that of disparate impact. In a Title VII employment discrimination case, "A disparate impact claim ... charges that a facially

neutral practice or test of the employer led to a discriminatory impact on a particular group and that the test or practice cannot be justified as a business necessity." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1520 (11th Cir.1995). This test does not require a showing of discriminatory intent.

■ Faced with the facts as established both by the Verified Complaint and Jones' Affidavit, the Court concludes that Plaintiffs have established a prima facie case of discrimination. Defendant—a place of public accommodation[2]—admits that it chose to expand its home delivery service to the predominantly Caucasian community of Amelia Island Plantation and not to the predominantly African–American community of American Beach. A prima facie case is established when the protected class of African–Americans are denied a service rendered to those falling outside of the class.

■ As stated, the Defendant can rebut the inference of discrimination by offering a legitimate, non-discriminatory reason for its actions. Distance cannot be the reason for Defendant's refusal to deliver to residences within American Beach: one need only look at a map to see that Defendant's principal place of business is closer to American Beach than to Amelia Island Plantation. The Defendant explains instead that providing home delivery services to American Beach would pose a security threat to its employees. In support of this assertion, Defendant's President states that "Power Pizza, Inc. determined after it's investigation, which included communications with law enforcement personnel, review of police reports and lighting conditions, that it should continue its 'drop off' policy to insure adequate security for its employees." Jones Aff. at ¶ 5. In response, Plaintiffs point out that the Sheriff of Nassau County, the county in which American Beach sits, has stated that there exists no greater security risk in delivering food to American Beach than in delivering food to any other community within Nassau County and that he would feel comfortable delivering food to

American Beach. Complaint at ¶ 13. Neither party's submission on the security issue is persuasive; however, it is Defendant's burden to persuade the Court that a *legitimate* non-discriminatory reason exists for the discriminating action, and at this stage Defendant has not met its burden.

Defendant argues that because of its franchise agreement, which restricts delivery to certain communities and excludes American Beach, Plaintiffs are not entitled to home delivery. The Court agrees that had this Defendant stayed within the geographic boundaries contemplated by the Agreement it probably could demonstrate a legitimate non-discriminatory reason for excluding American Beach from its delivery service area.[3] However, Defendant did not stay within the confines of the Agreement, but expanded to include a predominantly Caucasian community. Once Defendant made this decision, it lost forever the right to rely on the Agreement as the legitimate non-discriminatory reason for not providing American Beach with home delivery service.

Defendant also argues that it does provide American Beach with service—the drop off locations. Defendant makes this argument, in part, to show a lack of racial animus; however, as stated, Plaintiffs need not demonstrate discriminatory intent under a disparate impact theory. Further, even were the Plaintiffs to proceed under a theory of intentional discrimination, the Defendant's evidence that it does provide some service to American Beach is probative of little. Separate [and different] service is not equal.

In further support of its position, Defendant asks the Court to compare American Beach not with Amelia Island Plantation but with Yulee instead. Defendant argues that like American Beach, Yulee also falls outside the service area defined in the franchise Agreement and that Yulee, a predominantly Caucasian community, receives only drop-off service as well.

2. Defendant does not dispute that it falls within the definition of "public accommodation" as defined under the Act. *See* 42 U.S .C. § 2000a(b); *Newman v. Piggie Park Enterp., Inc.,* 377 F.2d 433, 436 (4th Cir.1967), *aff'd,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

3. Faced with this scenario the Plaintiffs might then attempt to show that the franchise Agreement itself was crafted with a discriminatory intent and that Defendant was aware of this intent.

To the extent this argument is made to show lack of discriminatory intent it must be rejected. Further, in making this argument Defendant fails to explain why it chose not to provide home delivery service to Yulee. For example, Defendant has not argued that it shares the same security concerns about Yulee that it allegedly has with respect to American Beach. A comparison between American Beach and Yulee is therefore unwarranted.

Because the Court is not persuaded at this point in time that legitimate reasons exist to explain why the Defendant is providing the population of American Beach with a service different from the service provided to the population of Amelia Island Plantation, the Court concludes that Plaintiffs are likely to succeed on the merits.

The Court need not consider the second prong of the preliminary injunction test: Defendant concedes that discrimination of the alleged type constitutes irreparable harm. *Cf. Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988) (irreparable harm is presumed in Title VII cases). With respect to the third prong of the test, the Court finds that the Plaintiffs' benefit from the issuance of the injunction will outweigh any harm to the Defendant. As stated, Defendant has not established the existence of legitimate safety concerns; thus, the Court cannot say that Defendant will be harmed by taking the risk of delivering to residences within American Beach, and any other harm to Defendant would be purely speculative.[4] Finally, the Court finds that the public's interest will not be disserved by the issuance of a preliminary injunction.

 The Court is mindful of the difficult standard that must be satisfied before it can intervene in the parties' dispute prior to complete adjudication; however, where evidence of a discriminating practice exists, where the Defendant has not established a legitimate, non-discriminatory reason for such practice, where the Plaintiffs will suffer irreparable harm as a result of its continuation, where the prevention of the practice will benefit the Plaintiffs more than it will burden the Defendant and where the public will not be disserved by the issuance of an injunction, the Court must act with its equitable power. Accordingly, after due consideration and being fully advised in the premises, it is

**ORDERED AND ADJUDGED:**

1) That the Defendant, its agents, employees, successors and assigns are hereby preliminarily enjoined from failing or refusing to deliver food ready for consumption, and providing in-home delivery services, to residents of, and residences within, the community known as American Beach and defined geographically as that area of Amelia Island, Nassau County, Florida, bounded on the south by Burney Road, on the west by Florida Highway A1A, on the north by Julia Avenue and on the east by the Atlantic Ocean, as long as the Defendant continues to deliver food ready for consumption, and providing in-home delivery services, to residents of, and residences within, the community known as Amelia Island Plantation;[5]

2) That this injunction shall remain in full force and effect until further order of the Court;[6] and

3) That no bond is necessary to support this injunction.

---

**4.** Indeed, the Defendant makes no other arguments on this point.

**5.** Plaintiffs argued during the hearing that if the Court entered an injunction of this type and as a result the Defendant chose to stop providing home delivery service to Amelia Island Plantation rather than begin providing home delivery service to American Beach, such a choice would be probative of intentional discrimination. The Court must disagree with this assertion. The Defendant could decide that the supposed risk of delivering to residences within American Beach outweighs the economic benefit derived from delivering to residences within Amelia Island Plantation. It will ultimately be up to the trier of fact to determine whether Defendant's alleged belief is reasonable, justified, and sincerely held.

**6.** The Court notes that Defendant has a right to appeal this decision pursuant to 28 U.S.C. § 1292(a) and that, pursuant to 28 U.S.C. § 1292(b), the Court gave Defendant the right to appeal the Court's Order denying Defendant's Motion to Dismiss.